ASSOCIATED BUILDERS & CONTRAC-
TORS, Saginaw Valley Area Chapter;
Coleman Electric, Inc.; Hovey Electric,
Inc.; Helm Electric, Inc., Plaintiffs–Ap-
pellees,

v.

Lowell W. PERRY, Director of
Department of Labor, State
of Michigan, Defendant,

Michigan Chapter of the National
Electrical Contractors Association,
Intervenor–Appellant.

No. 92–1704.

United States Court of Appeals,
Sixth Circuit.

Argued June 18, 1993.

Decided Feb. 14, 1994.

David J. Masud (argued and briefed),
Howard A. Vex, Masud & Gilbert, Saginaw,
MI, for plaintiffs-appellees.

George H. Kruszewski (argued and
briefed), Ann E. Neydon, Sachs, Nunn,
Kates, Kadushin, O'Hare, Helveston & Wald-
man, Detroit, MI, for defendant and interve-
nor-appellant.

Before: MERRITT, Chief Judge; and
GUY, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

The Michigan Chapter of the National Electrical Contractors Association (NECA) appeals the district court's granting of summary judgment for the plaintiffs because Michigan's law regulating apprenticeship programs is preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. Because we find that NECA, the intervenor in this action, lacks standing to bring this appeal, we DISMISS the appeal.

## I.

Section 3 of Michigan's Electrical Administrative Act, Mich.Comp.Laws Ann. § 338.883 (West 1992), gave the Electrical Administrative Board the power to make and enforce rules and regulations necessary to carry out its provisions. In 1973, the Board promulgated R. 338.1017 ("Rule 17"), which provided:

> An apprentice shall be registered with the board and hold an apprentice's card; however, there is no fee for this registration. An applicant for an apprentice registration card shall have attained the age of 18 years and shall be sponsored by the employing contractor. The work of an apprentice shall at all times be under direct supervision of a person holding a class 2 or class 3 license. *To assure proper supervision, a person holding a class 2 or class 3 license shall not have more than 1 apprentice working under him at any time.*

Rule 17 (emphasis added). Pursuant to a consent judgment entered into on December 14, 1973, the Michigan Department of Labor decided to enforce Rule 17 on a company-wide basis, instead of a job site to job site basis.

Because of the difficulties in enforcing Rule 17, in October of 1990, the Michigan legislature amended the Michigan Electrical Administrative Act to further regulate electrician apprentices. The legislation became effective on March 28, 1991. Most notably, the Act now requires that the ratio of electrical journeymen or master electricians to apprentice electricians be one-to-one (the "ratio requirement"). The law also requires electrical contractors to enroll their apprentices only in training programs that have been approved by the Michigan Department of Labor and that contain equivalent requirements to those imposed by the U.S. Department of Labor's Bureau of Apprenticeship and Training (the "equivalency requirement").

Associated Builders & Contractors (ABC) is a trade association whose membership is composed of general contractors, subcontractors, builders, and suppliers engaged in the construction business in Michigan. Plaintiffs Coleman Electric, Hovey Electric, and Helm Electric are members of ABC. ABC members provide apprenticeship training, but not under a program approved by the U.S. Department of Labor. The plaintiffs also do not maintain a 1:1 journeyman-to-apprentice ratio, but assign apprentices to journeymen as the needs of the job site demand. The plaintiffs agreed that since 1973, Rule 17 has required a 1:1 ratio, but argued that this rule has not been enforced. None of the plaintiffs recognizes or bargains with any labor organization.

These plaintiffs filed suit in district court on October 24, 1991, to enjoin Lowell Perry, director of the Michigan Department of Labor, from enforcing the ratio and equivalency amendments. The plaintiffs claimed that the new requirements were preempted by ERISA and by the National Labor Relations Act (NLRA), 29 U.S.C. §§ 141–187.

On November 13, 1991, the Michigan Chapter of the NECA filed a motion to intervene. This chapter of NECA is a trade association whose membership comprises electrical contractors within Michigan, most of whom employ electricians represented by the International Brotherhood of Electrical Workers. Almost all of NECA's members employ apprentices who are trained under a program that meets the standards approved by the United States Department of Labor, Bureau of Apprenticeship and Training; these apprentices thus meet the new law's "equivalency requirement." NECA contractors also use at least one licensed electrician for every apprentice on the job site, the same "ratio requirement" imposed by Rule 17 and the new amendment. It is unclear whether

NECA members have imposed this 1:1 ratio because this ratio was mandated by Michigan's Rule 17, because it is included in their collective bargaining agreements, or both.

NECA made several assertions in its motion to intervene:

5. NECA has a direct interest in insuring that MCLA 338.883e, enacted as a result of public concern and legislative awareness of the demonstrated danger and the anguish and pain caused by allowing untrained individuals to work unsupervised on intrinsically hazardous installations, be enforced to insure that proper safety and quality standards are preserved in the industry and to deny a competitive advantage to contractors, such as the plaintiffs herein, who employ unlicensed, untrained, and unsupervised individuals whom they designate as apprentices to perform work NECA members and other responsible employers have performed by experienced journeymen and qualified apprentices under their supervision.

6. If Plaintiffs' request for injunctive relief is granted, NECA's interest in continued enforcement of MCLA 338.883e will be fatally impaired.

7. NECA has great respect for the office of the Attorney General of the State of Michigan which will represent the defendant Director of the Michigan Department of Labor, but NECA believes its different interest and interest of those it represents, which are essentially the business and safety interest of the industry, will not be adequately represented by that office.

The district court granted NECA's motion to intervene under the permissive intervention rule, Fed.R.Civ.P. 24(b).

On April 23, 1992, the district court granted the plaintiffs' motion for summary judgment and denied the State's counter-motion for summary judgment 817 F.Supp. 49. The court ordered the State to refrain from enforcing the ratio and equivalency requirements found in the amendments because the new provisions were preempted by section 514(a) of ERISA. The court did not address the issue of NLRA preemption, which the plaintiffs also had raised.

The State did not appeal the district court's order, advising the plaintiffs in a May 11, 1992 letter that "the Department of Labor is satisfied that Judge Cleland has correctly resolved the issues and we will not be requesting an appeal of his decision." NECA, as intervenor, however, filed an appeal. The plaintiffs filed a motion to dismiss the appeal based on NECA's lack of standing to appeal, and a panel of this Court ordered that because of the complexity of the standing issue, that motion would be submitted to the panel addressing the merits of the appeal. Thus, we first must decide whether appellant NECA has standing to bring this appeal.[1]

We find that because NECA lacks standing to appeal, the appeal must be dismissed.

## II.

■■■ An intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing. *Trbovich v. United Mine Workers*, 404 U.S. 528, 536–39, 92 S.Ct. 630, 635–36, 30 L.Ed.2d 686 (1972). And an intervenor, by right or permission, normally has the right to appeal an adverse final judgment by a trial court, just as any other party can. *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375–76, 107 S.Ct. 1177, 1182, 94 L.Ed.2d 389 (1987). However, as any other party, an intervenor seeking to appeal must have standing under Article III of the Constitution entitling it to have the court decide the merits of the dispute. *Diamond v. Charles*, 476 U.S. 54, 68, 106 S.Ct. 1697, 1706, 90 L.Ed.2d 48 (1986). The standing requirement therefore may bar an appeal even though a litigant had standing before the district court. *United States v. Van*, 931 F.2d 384, 387 (6th Cir.1991).

Article III of the Constitution confines federal courts to adjudicating actual "cases" or "controversies." *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The constitutional requirement is

---

**1.** The issue of whether the district court properly permitted NECA to intervene is not before us.

that the "plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* at 751, 104 S.Ct. at 3324. This "injury in fact" requirement mandates that the party allege " 'such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). As the *Allen* Court noted, this constitutional component has not been precisely defined but requires an allegation that the injury is "distinct and palpable," and "not 'abstract' or 'conjectural' or 'hypothetical.' " *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324. Palpable economic injuries "have long been recognized as sufficient to lay the basis for standing, with or without a specific statutory provision for judicial review." *Sierra Club v. Morton,* 405 U.S. 727, 733–34, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972). In addition, a sufficient "injury in fact" can be alleged from a noneconomic or aesthetic harm. *See id.* at 734, 92 S.Ct. at 1366.

■ Along with this constitutional requirement are the self-imposed prudential limits that the judiciary has placed on the exercise of its jurisdiction. These limits include a general prohibition on litigating another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interest protected by the law invoked. *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324. These prudential concerns enable the judiciary to "avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979).

■ Here, plaintiffs filed suit to enjoin the State of Michigan from enforcing the new apprenticeship provisions in the law because those provisions were preempted. The district court found that the provisions were in fact preempted. The State declined to appeal, concluding that the district court was correct.

NECA nevertheless seeks to appeal, arguing that it has two interests in this matter sufficient to confer standing upon it to do so. First, NECA claims an interest in having the safety and quality standards in the industry preserved through enforcement of the Act, stating that its own experience in the industry demonstrates that improperly supervised and trained apprentices "are a danger to themselves, their fellow workers, and the public." NECA submitted numerous affidavits from former and present apprentices employed by its member contractors, supporting its claims that apprentices have been injured or killed because of inadequate training and lack of journeyman supervision and that the new Michigan law corrected this by requiring training in an approved apprenticeship program and direct one-on-one supervision. Second, NECA wants enforcement of the new law to negate the competitive advantage of contractors such as plaintiffs "who employ unlicensed, untrained, and unsupervised individuals whom they designate as apprentices to perform work NECA members and other responsible employers have performed. . . ."

Both of the interests asserted by NECA are interests in having the state law enforced. In essence then, by intervening in this litigation and attempting to pursue this appeal, NECA seeks to require the State of Michigan to enforce its own statute. The issue, therefore, is whether these interests in the statute's enforcement are sufficient to confer standing on NECA to appeal what the state has elected not to appeal—the district court's order that the state law is not enforceable. We find that *Diamond v. Charles,* 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986) is controlling here, and that, under the reasoning of that case, NECA lacks standing to prosecute this appeal.

In *Diamond,* four physicians who provided obstetric, gynecologic, and abortion services in Illinois filed suit challenging an Illinois law that increased regulation over abortions. *Id.* at 56, 106 S.Ct. at 1700. Because they faced possible prosecution under the new law,

these physicians clearly had standing to bring suit against the state officials enforcing the law. *Id.* at 64, 106 S.Ct. at 1704. When the district court granted a permanent injunction against the law's enforcement, the State did not appeal. Diamond, a pediatrician who intervened in the action based on his conscientious objection to abortions and his status as a pediatrician and a parent, appealed the injunction that made the law unenforceable.

The Supreme Court dismissed the action because "a private party whose own conduct is neither implicated nor threatened by a criminal statute has no judicially cognizable interest in the statute's defense." *Id.* at 56, 106 S.Ct. at 1700. The Court noted that had the State sought review, the "case" or "controversy" requirement would have been met because "a State has standing to defend the constitutionality of its statute." *Id.* at 62, 106 S.Ct. at 1703. Furthermore, if the State had appealed, the pediatrician, as intervenor, would have been entitled under Supreme Court Rule 10.4 to seek review. *Id.* at 64, 106 S.Ct. at 1704. However, the Court explained that the State's failure to appeal left the Court without a case or controversy between the plaintiffs and the State. Absent an appeal by the State, Diamond could not continue the litigation because, even if the challenged law ultimately were held to be constitutional, Diamond could not compel the State to enforce it since " 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.' " *Id.* at 63, 106 S.Ct. at 1704 (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973)). The Court noted as well, quoting *Allen v. Wright,* 468 U.S. at 754, 104 S.Ct. at 3326, that the "right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." Finally, the Court concluded:

> The concerns for state autonomy that deny private individuals the right to compel a State to enforce its laws apply with even greater force to an attempt by a private individual to compel a State to create and retain the legal framework within which individual enforcement decisions are made. The State's acquiescence

in the Court of Appeals' determination of unconstitutionality serves to deprive the State of the power to prosecute anyone for violating the Abortion Law. Diamond's attempt to maintain the litigation is, then, simply an effort to compel the State to enact a code in accord with Diamond's interests. But "the power to create and enforce a legal code, both civil and criminal" is one of the quintessential functions of a State. Because the State alone is entitled to create a legal code, only the State has the kind of "direct stake" identified in *Sierra Club v. Morton,* 405 U.S., at 740, 92 S.Ct., at 1369, in defending the standards embodied in that code.

*Diamond,* 476 U.S. at 65, 106 S.Ct. at 1705 (citation omitted).

The controversy in the case before us today was between the plaintiffs and the State of Michigan over the enforceability of certain provisions of the Michigan Electrical Administrative Act against the plaintiffs. The district court enjoined the enforcement, ruling that the provisions at issue were preempted by federal law and the State agreed with that judgment and declined to appeal. Like Diamond, NECA attempts to maintain this litigation simply to "compel the State to enact a code in accord with [its] interests." We hold that, like Diamond, NECA cannot do so.

NECA seeks to distinguish *Diamond,* arguing that *Diamond* involved a criminal abortion statute, while this case involves a civil regulatory statute that can be enforced by private parties. NECA notes that sections 8b(1) and (2) of the Michigan Act allow the Department to hold hearings to address violations of the Act pursuant to Michigan's Administrative Procedure Act (APA), and that Section 63 of the APA, M.C.L.A. § 24.-263, permits an interested person to request a declaratory ruling of an agency and to seek judicial review of that ruling to determine "the applicability to an actual state of facts of a statute administered by the agency or of a rule or order of the agency."

In the context of standing, however, the criminal versus civil distinction is a distinction without a difference. The *Diamond* Court held that the State's "acquiescence in

the Court of Appeals' determination of unconstitutionality serve[d] to deprive the State of the power to prosecute anyone for violating the Abortion Law." *Diamond,* 476 U.S. at 65, 106 S.Ct. at 1705. In this case, the acquiescence of the State of Michigan in the district court's determination that the state law was preempted serves to deprive the State of the power to address violations of and enforce compliance with the Electrical Administrative Act. *Diamond*'s broad language specifically encompasses civil as well as criminal statutes:

> "the power to create and enforce a legal code, both civil and criminal" is one of the quintessential functions of a State. *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,* 458 U.S. 592, 601, 102 S.Ct. 3260, 3265–66, 73 L.Ed.2d 995 (1982). Because the State alone is entitled to create a legal code, only the State has the kind of "direct stake" identified in *Sierra Club v. Morton,* 405 U.S., at 740, 92 S.Ct., at 1369, in defending the standards embodied in that code.

*Diamond,* 476 U.S. at 65, 106 S.Ct. at 1705. And *Snapp,* which *Diamond* quotes, speaks not of "quintessential functions," but of sovereignty: "Two sovereign interests are easily identified: First, the exercise of sovereign power over individuals and entities within the relevant jurisdiction—this involves the power to create and enforce a legal code, both civil and criminal...." *Snapp,* 458 U.S. at 601, 102 S.Ct. at 3265. Definitionally, the state cannot be compelled by a citizen to exercise its sovereign powers.

■ Nor does the applicability of the APA to the Act help NECA. Under the APA, NECA, as an "interested person," could have requested a declaratory ruling from the Michigan Department of Labor as to the applicability of the Electrical Administrative Act to the failure of plaintiffs to comply with the Act's ratio and equivalency requirements, could have sought judicial review of that ruling, and could have, if the agency refused to issue such a ruling, brought suit for judicial review of the agency's refusal to rule.[2]

However, the procedures available to private parties under the APA do not create in those private parties the right to require the state to enforce a statute which it chooses not to enforce.

The interests asserted by NECA in support of its claim of standing can be vindicated only by enforcement of the state law. The State of Michigan has demonstrated its lack of interest in such enforcement by declining to prosecute this appeal. Because NECA cannot, for the reasons set forth above, compel the State to enforce a law which it has chosen to abandon, NECA cannot demonstrate the kind of interest necessary to confer standing to prosecute this appeal.

## III.

For the reasons set out above, we find that appellant NECA lacks standing to bring this appeal. Because we must DISMISS the appeal for lack of jurisdiction, we cannot address the merits of the appeal and the preemption issue.

MERRITT, Chief Judge.

I concur in the result in this case, but I write separately to clarify the principle of law that I think compels this result.

In *Bryant v. Yellen,* 447 U.S. 352, 100 S.Ct. 2232, 65 L.Ed.2d 184 (1980), a federal statute governing the allocation of irrigation waters in the West was intended to benefit smaller farmers by restricting access to this water to farmers holding no more than 160 acres of land. *Id.* at 368 n. 19, 100 S.Ct. at 2241 n. 19. The U.S. government brought suit against a California irrigation agency to force its compliance with the federal statute; the district court found that the statute did not apply to certain lands in California, owned in parcels larger than 160 acres, which had vested rights to irrigation waters; and the U.S. government declined to appeal that decision. Nevertheless, the Supreme Court unanimously recognized the standing of a group of farmworkers to intervene and appeal the decision, against the California agen-

---

**2.** *See Ferency v. Austin,* 493 F.Supp. 683 (W.D.Mich.1980), *aff'd,* 666 F.2d 1023 (6th Cir. 1981).

cy, despite the fact that the federal government, the source and enforcer of the statute, had withdrawn. *Id.* at 366–68, 100 S.Ct. at 2240–41.

In the instant case, what is controlling is not that the State has withdrawn, but that the union contractors are not an intended target or beneficiary of the statute, nor do they allege any other sufficiently direct stake in the outcome of the litigation, nor do they claim or seem to represent apprentices or other such beneficiary. The fact that the statute could affect the competitive position of union contractors is not by itself sufficient to confer standing.

The court holds that "only the State of Michigan has the kind of direct stake in defending the provisions of its law necessary to confer standing to prosecute this appeal." If the court means that, as between the State and NECA, only the State had sufficient stake to appeal, I agree. But to the extent that the court means that only a state has standing to litigate the validity of its own statute—that there can be no case or controversy if a state declines to defend its statute—I must disagree. There clearly is no constitutional rule that only a state can defend its own statute, and any number of famous cases demonstrate that two private parties are fully entitled to litigate the constitutionality or other validity of state statutes. *See, e.g., Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 4 L.Ed. 97 (1816); *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824); *Charles River Bridge v. Warren Bridge,* 36 U.S. (11 Pet.) 420, 9 L.Ed. 773 (1837); *West Coast Hotel v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). But, of course, each such party must have *standing,* a sufficient personal stake in the outcome of the controversy.

I would underscore this point by quoting from the Supreme Court's decision in *Diamond v. Charles,* 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986), on which the court's opinion relies. Justice Blackmun writes that "Because a private party *whose own conduct is neither implicated nor threatened* by a criminal statute has no judicially cognizable

interest in the statute's defense, we dismiss the appeal for want of jurisdiction." 476 U.S. at 56, 106 S.Ct. at 1700 (emphasis added). In that case, Dr. Diamond did not have standing because his own interests were not sufficiently implicated by the abortion statute. Here, NECA does not have standing to bring this appeal simply because its interests are not sufficiently affected by the Michigan statute. I do not read *Diamond* to establish the rule that no private party intervenor can have standing to pursue an appeal that an original state party declines to bring, and to the extent that this court establishes such a rule in this Circuit, I must disagree.