Carlis D. HART, Plaintiff,

v.

**RIVERSIDE HOSPITAL, INC., Defendant.**

Civ. A. No. 4:95cv45.

United States District Court, E.D. Virginia, Newport News Division.

Oct. 5, 1995.

Byron Alexander Adams, Newport News, VA, Gerald Richard Walsh, Gerald R. Walsh, P.C., Fairfax, VA, James Edward Fagan, III, Gerald R. Walsh, P.C., Fairfax, VA, for plaintiff.

Alexander William Charters, Heilig, McKenry, Fraim & Lollar, P.C., Norfolk, VA, John Anders Heilig, Heilig, McKenry, Fraim & Lollar, Norfolk, VA, Carolyn Porter Oast,

Heilig, McKenry, Fraim & Lollar, Norfolk, VA, George Harris Heilig, Jr., Heilig, McKenry, Fraim & Lollar, Norfolk, VA, for defendant.

### OPINION AND ORDER

DOUMAR, District Judge.

Plaintiff Carlis Hart ("Hart") brings a suit against Defendant Riverside Hospital, Inc. ("Riverside") under the Emergency Medical Treatment and Active Labor Act ("EMTA-LA"), 42 U.S.C.S. § 1395dd (1993). Presently before the court is a motion by Plaintiff to amend her complaint. For the reasons stated below, the motion is **DENIED.**

### I. Factual and Procedural Background

On July 16, 1993, Plaintiff was in the last weeks of her pregnancy, and went to Riverside to have her baby delivered at approximately 7:00 a.m. that day. Complaint, ¶¶ 6, 7. She was placed in the hospital's delivery unit for monitoring in preparation for delivery. Id., ¶ 8. Complications arose; Plaintiff began to leak amniotic fluid, her contractions caused her increased pain, and she was provided oxygen by means of an oxygen mask. Id., ¶ 16. As evening came, personnel at Riverside decided to send Plaintiff to Norfolk General Hospital for delivery by Cesarean section. Id., ¶ 17. An ambulance was called at approximately 8:00 p.m., and Plaintiff was transferred approximately 40 minutes later. Id. ¶¶ 18, 19. By the time Plaintiff arrived at Norfolk General, she was in "severe distress," Id. ¶ 26, and soon after arriving delivered her baby spontaneously Id., ¶ 27. Plaintiff immediately underwent surgery to close extensive vaginal laceration that occurred during delivery. Id., ¶ 29. After being discharged, plaintiff suffered several complications, and required further treatment. Id., ¶¶ 30–36.

Plaintiff contends that Riverside violated the provisions of 42 U.S.C.S. § 1395dd (1993), or EMTALA, a statute aimed at preventing "patient dumping," the practice of refusing emergency medical treatment to patients unable to pay, or transferring such

patients before their emergency conditions are stabilized. *See Baber v. Hospital Corp. of Amer.,* 977 F.2d 872, 879–880 (4th Cir. 1992); *Brooks v. Maryland Gen. Hosp., Inc.,* 996 F.2d 708, 710–11 (4th Cir.1993), and *Matter of Baby K,* 16 F.3d 590, 593 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 91, 130 L.Ed.2d 42 (1994) (discussing history and purpose of EMTALA). EMTALA requires hospitals which provide Medicare or Medicaid to adopt and enforce policies which comply with EMTALA. 42 U.S.C. § 1395cc(a)(1)(I)(i) (1993). Liability is imposed upon hospitals which fail to stabilize patients in an emergency condition or fail to stabilize a patient before transfer to another facility. 42 U.S.C.S § 1395dd (1993). Plaintiff avers that Riverside violated EMTALA in several respects, Complaint, ¶ 41, and also violated 42 U.S.C.S. § 1395cc(a)(1)(I)(i) (1993) because it failed to adopt and enforce a policy to ensure compliance with EMTALA. Id., ¶ 40. Plaintiff seeks $3,000,000 in compensatory damages and punitive damages in the amount of $350,000.[1]

### II. Discussion

Plaintiff has moved to amend the Complaint so as to add a new Count which would seek injunctive relief requiring Riverside to take certain actions to comply with EMTALA in the future. Hart contends that her discovery to date has revealed that Defendant is currently in violation of EMTALA, and thus seeks a court order mandating that Riverside comply with the law. Plaintiff's motion seeks not injunctive relief as to herself individually, but a blanket order commanding Riverside to abide by EMTALA as to all patients. The injunction sought would require, *inter alia,* that Riverside: (1) adopt and enforce policies requiring an individual's written request for a transfer as mandated by EMTALA; (2) cease and desist from transferring individuals protected by EMTALA on the individual's oral consent; and (3) inform individuals protected by EMTALA of

---

1. Another order of this court, not pertinent to this opinion, ordered that total damages in this case be limited to $1,000,000 in accordance with

*Power v. Arlington Hosp. Ass'n,* 42 F.3d 851 (4th Cir.1994).

Riverside's obligations under the statute. *See* Pl. Motion to Amend at 2–4.[2]

■ Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend a pleading by leave of the court. Such leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The decision to grant leave to amend is within the discretion of the trial court. *Medigen of Kentucky v. Public Service Com'n*, 985 F.2d 164, 167 (4th Cir.1993). The Supreme Court has instructed that the mandate of freely granting leave to amend should be followed unless there is a "declared reason" such as "bad faith, or dilatory motive.... repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Ordinarily, such an amendment would be allowed if the plaintiff could initially have so proceeded. In this instance, the plaintiff could not have so proceeded for two reasons: because she lacks standing to bring such a case, and because the Court is not empowered to issue the broad injunction sought. These reasons are somewhat intertwined.

■ Plaintiff lacks standing to bring a case as to all patients. The "case or controversy" clause of Article III requires claimants to demonstrate an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). This rule applies equally to injunctions. *Adarand Constructors, Inc. v. Pena*, ——— U.S. ———, ———, 115 S.Ct. 2097, 2104, 132 L.Ed.2d 158 (1995). The fact of past injury to plaintiff affords her standing to claim damages, but "does nothing to establish a real and immediate threat" that she would face similar injury in the future. *Id.* (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983)). Plaintiff has made no showing that she plans to utilize the services of Riverside again in the future. Hart has indicated that she desires the in-

junction not for herself, but for those who might utilize the hospital in the future. But she has not demonstrated that she is empowered to act on behalf of others similarly situated who may use these services.

■ The Court also finds that the broad injunction sought by Plaintiff could not issue. EMTALA's civil enforcement provision states that

> any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of [EMTALA] may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, *and such equitable relief as is appropriate.*

42 U.S.C.S. § 1395dd(d)(2)(A) (1993) (emphasis added). The Court believes it is not only inappropriate to issue the broad injunctive relief sought by Hart (i.e., an order requiring Riverside to comply with the law as to all patients, present and future), it does not have the power under the statute to do so.

■ Were this Court to issue the injunction apparently sought by Hart, the Court might well be involved in judging, on a regular basis, whether Riverside was following the standards of EMTALA. The Court would have to, for example, assure itself that Riverside had devised and implemented internal policies and procedures required under EMTALA. 42 U.S.C. § 1395cc(a)(I)(i) (1993). It would have to assure itself that Riverside was conducting orientation and training for new personnel regarding these policies. It would have to undertake an exhaustive review to ensure that Riverside was complying with such policies. And so on.

That job is not the role of this Court, but for the Executive, which is charged with "taking care" that the laws be "faithfully executed." U.S. CONST. art. II, § 3. EMTALA provides the Secretary of Health and Human Services adequate powers to carry out this function. It provides for civil money penalties of up to $50,000 for each negligent

---

**2.** In total, Hart seeks an injunction requiring Riverside to take nine specific steps. *Id.* The foregoing examples are provided for illustrative purposes.

violation of EMTALA. 42 U.S.C.S. § 1395dd(d)(1)(A) (1993). The Secretary also has a more harsh sanction at her disposal: to terminate a hospital from eligibility for Medicare and Medicaid if it substantially fails to comply with its provider agreement. 42 U.S.C.S. § 1395cc(b)(2)(A) (1993).

In the past several decades, federal courts have used their equitable powers to issue structural injunctions which resulted in court supervision of many of the nation's public institutions, such as schools, prisons, and mental hospitals. *Missouri v. Jenkins,* — U.S. ——, ——, 115 S.Ct. 2038, 2067, 132 L.Ed.2d 63 (1995) (Thomas, J., concurring) (collecting cases). Such extraordinary remedial action has been necessary to secure *constitutional* rights when state or local officials were unwilling or unable to do so. Indeed, this Court was long involved in the desegregation of public schools in the City of Norfolk. *See Riddick v. School Bd. of Norfolk,* 627 F.Supp. 814, 816–17 (E.D.Va.1984) (discussing history of desegregation litigation regarding Norfolk). Plaintiff makes no suggestion that a deprivation of her constitutional rights has occurred.[3]

■ At common law, the jurisdiction of an equity court was limited to cases where there was an inadequate remedy at law. 1 *Pomeroy's Equity Jurisprudence* § 132 (5th ed. 1941). That remains the case today in federal courts, which require a showing of inadequacy of legal remedies and irreparable harm before a permanent injunction will issue. *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959). Here, there are clear remedies allowed under the statute. Where a statute authorizes injunctive relief for its enforcement, plaintiffs need not prove irreparable injury. *Environmental Defense Fund, Inc. v. Lamphier,* 714 F.2d 331, 338 (4th Cir. 1983). All this demonstrates that the central purpose of equitable relief has always been *remedial*—to right the wrong caused to the complainant which could not be compensated by money damages in a law court.

■ Although the statute in the case at bar provides that a plaintiff can obtain both damages and "such equitable relief as is appropriate," the Court finds that the equitable relief available under the statute is designed to remedy or prevent harm suffered or anticipated *by the plaintiff.* This conclusion is buttressed by the statute itself: it permits a civil action by individuals who suffer "personal harm." 42 U.S.C.S. § 1395dd(d)(2)(A) (1993). If it were not a right of "personal harm," it would not have been so limited in that manner. Moreover, if the case could proceed for the public or all others, then "others" might be foreclosed from pursuing any such relief in the future because of estoppel or res judicata principles should the plaintiff be able to proceed for "others" and then fail to prove the case.

The limited authority in the statute in the instant case to seek "such equitable relief as is appropriate" contrasts with several federal environmental statutes, which provide explicit authority for a Court to order compliance with the law, and which also empower plaintiffs to act as "private attorneys general"—essentially on behalf of the United States—to ensure such compliance. *See, e.g.,* 33 U.S.C.S. § 1365(a) (1987 & Supp.1995) (Clean Water Act); 42 U.S.C.S. § 9659 (1989); (CERCLA); 42 U.S.C.S. § 6972 (1994) (RCRA); *see also Environmental Defense Fund, Inc. v. Lamphier,* 714 F.2d 331, 337 (4th Cir.1983) (permitting injunctive relief in RCRA citizen-suit). In each of those statutes, the courts are granted broad equitable powers to issue injunctions applicable to the government or other private persons in order to accomplish the statutory mandate. In the Clean Water Act, for example, courts have jurisdiction to "enforce ... effluent standard[s] or limitation[s], or orders [issued by the EPA Administrator or a State], or to order the [EPA] Administrator to perform such act or duty." 33 U.S.C.S. § 1365(a) (1987). The provision in EMTALA in no way suggests the same sort of expansive

---

**3.** It is unlikely that such a deprivation would ever be found in the case of Riverside, which is probably not a "state actor." *See, e.g., Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct.

2744, 73 L.Ed.2d 482 (1982) (discussing state action doctrine). But the Court does not pass on that issue, as it is not before the Court.

**268**

reach. As noted above, it is specifically limited to actions for "personal harm." It certainly does not grant federal courts the specific authority to order general compliance with the law. And it is undeniable that it is not a "private attorney general" statute. Absent direction to the contrary from Congress, this Court will read the provision as it was intended—as applying only to the individual plaintiff before the Court seeking to remedy "personal harm."

Two district courts which have ruled on EMTALA's equitable relief provision are in accord with the conclusion of this Court, i.e., that injunctions should be tailored to the individual plaintiff. *See Jones v. Wake County Hosp. System, Inc.*, 786 F.Supp. 538, 545 (E.D.N.C.1991) (denying 12(b)(6) motion in case where narrow injunction sought); *Owens v. Nacogdoches County Hosp. Dist.*, 741 F.Supp. 1269, 1281 (E.D.Tex.1990) (issuing injunction tailored to plaintiff).

As the unelected branch of government, the federal judiciary is of necessity reposed with certain limited powers. Its equitable powers either existed in its ancient chancery jurisdiction or were specifically granted by the law-making body. This Court has neither the implicit power to act as the plaintiff requests nor has it been granted such powers. Accordingly, plaintiff's motion to amend the Complaint is **DENIED.**

The Clerk of the Court is **DIRECTED** to forward copies of this opinion and order to counsel for the parties.

**IT IS SO ORDERED.**