RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name:  05a0408p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

PROVIDENCE BAPTIST CHURCH, et al.,
>     *Plaintiffs-Appellees,*

CITY OF EUCLID,
>     *Defendant-Appellee,*

> No. 04-4542

     *v.*

HILLANDALE COMMITTEE, LTD.,
>     *Intervenor-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-00746—Kathleen McDonald O'Malley, District Judge.

Argued:  July 19, 2005

Decided and Filed:  October 5, 2005

Before:  CLAY, GILMAN, and COOK, Circuit Judges.

———————————

## COUNSEL

**ARGUED:**  Gerald W. Phillips, PHILLIPS & CO., LPA, Avon, Ohio, for Appellant.  Gary F. Werner, BERNS, OCKNER & GREENBERGER, Cleveland, Ohio, Stephen M. O'Bryan, TAFT, STETTINIUS & HOLLISTER, Cleveland, Ohio, for Appellees.  **ON BRIEF:**  Gerald W. Phillips, PHILLIPS & CO., LPA, Avon, Ohio, for Appellant.  Gary F. Werner, Sheldon Berns, BERNS, OCKNER & GREENBERGER, Cleveland, Ohio, Stephen M. O'Bryan, Majeed G. Makhlouf, TAFT, STETTINIUS & HOLLISTER, Cleveland, Ohio, L. Christopher Frey, LAW DIRECTOR, CITY OF EUCLID, Euclid, Ohio, for Appellees.

———————————

## OPINION

———————————

CLAY, Circuit Judge.  Intervenor, Hillandale Committee, Ltd. ("Hillandale Committee"), appeals from the order of the district court denying its motion to intervene in a dispute between Plaintiffs, Providence Baptist Church, Reverend Rodney Maiden, and Francine James (collectively, "Providence"), and Defendant, City of Euclid ("Euclid").  Hillandale Committee also appeals the district court's entry of a consent judgment in the case between Providence and Euclid.

This case arises from a challenge to the Euclid zoning code by Providence, which alleged violations of the First and Fourteenth Amendments, the Religious Land Use and Institutionalized

1

Persons Act, 42 U.S.C. § 2000cc, *et seq*., and 42 U.S.C. §§ 1982 and 1988. Hillandale Committee moved to intervene in the lawsuit, asserting as grounds that in the absence of intervention, the results of a referendum on the zoning code could be nullified by a settlement between Euclid and Providence, and that Euclid might not adequately represent Hillandale Committee's purported interest in opposing the re-zoning or Hillandale Committee's purported interest in the protection of its referendum and free speech rights. The district court denied the motion to intervene and entered a consent judgment between Providence and Euclid after those parties reached a negotiated settlement terminating the litigation.

For the following reasons, we **AFFIRM** the district court's denial of Hillandale Committee's motion to intervene, and **DISMISS** Hillandale Committee's challenge to the consent judgment on the ground that Hillandale Committee lacks standing to bring that challenge.

## BACKGROUND

Providence Baptist Church, established in 1921, has a predominantly African-American congregation of more than 1,200 members. Plaintiff Reverend Rodney Maiden has been the senior pastor of the church since 1980, and Plaintiff Francine James is an individual member of the church and Euclid resident. When Providence outgrew its location in Cleveland, it sought to purchase property in the nearby area. Providence identified 68.092 acres of land for that purpose in Euclid, Ohio. Euclid is approximately twelve miles northeast of downtown Cleveland, and has a population of approximately 52,000. Providence planned to build a worship facility and a single- family-home development, with homes to be offered for sale to members of the church and the general public.

Euclid's zoning code divides the city into twelve separate zoning districts delineating specific uses permitted in each district. The zoning code allows churches as a permitted use only in the U-R-2 District. At the time the U-R-2 designation was created, all existing churches were zoned U-R-2, but no other property is so classified. The property Providence planned to buy, except for a small portion, was zoned U7 Light Industrial Park District, to be used only for specific manufacturing and assembly processes and products. The remainder of the church's property was zoned U4 Local Retail or Wholesale Store Districts.

Prior to purchasing the property, Providence petitioned the city to re-zone the parcel on which it planned to construct its worship facility as U-R-2, and the parcel on which it planned to build the single family housing as the U-1 Single Family House District zoning classification. The city council passed ordinances which did just that on February 2, 2004. However, on March 1, 2004, referendum petitions were submitted to the city's finance director in order to place those ordinances on the ballot at the November 2, 2004 general election. The Cuyahoga County Board of Elections was duly directed to submit the ordinances to the electors of the city at the November 2, 2004 election. Consequently, the ordinances did not become effective and Providence was unable to use its property for the planned worship facility and single-family development.

Providence purchased the property on April 18, 2004, and instituted this action in the United States District Court for the Northern District of Ohio on April 21, 2004. Providence's complaint charged that the zoning code violated the First and Fourteenth Amendments of the United States Constitution. An amended complaint, filed on September 24, 2004, added claims under 42 U.S.C. §§ 1982 and 1988 and claims for violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. 2000cc, *et seq*.

On October 28, 2004, Hillandale Committee moved to intervene as a matter of right, under Federal Rule of Civil Procedure 23(A). In the motion to intervene, Hillandale Committee described itself as "the duly authorized committee which circulated the referendum petitions" to place the ordinances rezoning Providence's property on the ballot in the November 2, 2004 election.

However, Hillandale Committee was not incorporated until October 20, 2004. Various pieces of campaign literature related to the referendum, which were submitted during the litigation before the district court by Hillandale Committee, do not bear Hillandale Committee's name, but that of the "Euclid Awareness Committee." In a sworn affidavit, Rebecca Conway ("Conway") stated that she was involved in the referendum petition process, and that there was "a referendum committee composed of six (6) members for the Rezoning Ordinances who represents the Hillandale Committee which initially was an unincorporated association of individuals, but who later formed the Hillandale Committee Ltd." (J.A. at 327.)

Hillandale Committee cited as grounds for its motion that its interest in opposing the rezoning, and that the right of the voters to vote on the ordinances at the November 2, 2004 election, could be threatened or nullifed by a proposed settlement between Euclid and Providence. Hillandale Committee further argued that Euclid might not adequately represent Hillandale Committee's interest in opposing the rezoning and in protecting Hillandale Committee's constitutional referendum rights. Both Providence and Euclid filed memoranda in opposition to the motion to intervene.

On November 2, 2004, the voters of Euclid rejected the two re-zoning ordinances. On November 16, 2004, the district court denied Hillandale Committee's motion to intervene, on the grounds that it was procedurally defective because it was not accompanied by a pleading, as required by Federal Rule of Civil Procedure 24(c) and that it was mooted by the November 2, 2004 election.

Providence and Euclid then negotiated a settlement of the litigation. Providence and Euclid entered a consent judgment on November 17, 2004, in which they stipulated, and the district court found that Euclid's zoning code was unconstitutional as applied to Providence's property. The consent judgment permitted the development of the planned worship facility and single family housing. Various requirements related to the hiring of contractors and builders, the square footage of the various types of homes to be constructed, and the base prices of the homes, as well as a declaration of covenants, easements, and restrictions, were included in the consent judgment.

Hillandale Committee filed a notice of appeal to this Court from the denial of the motion to intervene and the dismissal of the action pursuant to the consent judgment, on November 17, 2004. On January 12, 2005, Euclid and Providence filed a joint motion to dismiss the appeal as moot. This Court entered an order on March 15, 2005, denying it "at this time." The order held that

> [t]he appellant has standing to appeal the denial of its motion to intervene. The issue of whether the appellant also has standing to appeal the consent judgment is complex and is intertwined with the merits of the intervention appeal. Therefore, the panel to be assigned to hear this appeal on the merits should decide whether the appellant's interest in the litigation equates to Article III standing for the purposes of pursuing an appeal of the consent judgment or whether the appeal is moot because no effective relief can be granted.

## DISCUSSION

### I.    Denial of the Motion to Intervene for Failure to Comply with the Procedural Requirements of Federal Rule of Civil Procedure 24(c)

### A.    Standard of Review

This Court generally reviews *de novo* a district court's determination of whether a would-be intervenor has satisfied the elements required for intervention. However, we conclude that the appropriate review of the question of whether a motion to intervene should be dismissed for failure

to satisfy the procedural requirements of Rule 24(c), as with the question of whether it should be dismissed for untimeliness, is for abuse of discretion. *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 595 (7th Cir. 1993) ("Whether to permit a procedurally defective motion to intervene is within the sound discretion of the district court.") This approach accords with the general principle that "issues involving what can broadly be labeled 'supervision of litigation'" are reviewed for abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 559 (1988).

### B.        Analysis

One who seeks to intervene must serve a motion stating the grounds for intervention and accompanied by a pleading setting forth the claim or defense for which intervention is sought. FED. R. CIV. P. 24(c). The district court's dismissal of Hillandale Committee's motion to intervene was based in part on Hillandale Committee's failure to attach a pleading to its motion to intervene. Hillandale Committee does not dispute that it failed to file such a pleading. Hillandale Committee argues, however, that Rule 24(c) should not be applied "hyper-technically." We note that the motion to intervene did include a statement of "legal grounds[,] reasons[,] and arguments" contending that intervention was appropriate.

The circuits appear to be split in their approach to enforcement of Rule 24(c), with a majority favoring a permissive interpretation of the rule. With the exception of a 1951 case involving quite different circumstances from those of this case, this Court apparently has not considered whether failure to file a pleading as required by Rule 24(c) should be grounds for denying the motion.[1] *See Kentucky Home Mut. Life Ins. Co. v. Duling*, 190 F.2d 797, 803(6th Cir. 1951) (members of the Nashville Postal Employees Benefit Society could not intervene, post-judgment, in an action by another member against an insurance company; the "intervening petition . . . is not a pleading stating a cause of action against the Insurance Company, and does not comply with the provisions of Rule 24(c)").

At least four circuits have taken a lenient approach to the requirements of Rule 24(c). The D.C. Circuit has explained that "'procedural defects in connection with intervention motions should generally be excused by a court,'" particularly where there is no claim that the parties do not have notice of the intervenor's appeal. *Mass. v. Microsoft Corp.*, 373 F.3d 1199, n. 19 (D.C. Cir. 2004) (quoting *McCarthy v. Kleindienst*, 741 F.2d 1406, 1416 (D.C. Cir. 1984)). The Eleventh Circuit has similarly suggested that "inconsequential" procedural noncompliance with the requirements of Rule 24 should be excused. *Piambino v. Bailey*, 757 F.2d 1112, 1121 (11th Cir. 1985). The Fourth Circuit has held "the proper approach [to Rule 24(c)] is to disregard non-prejudicial technical defects." *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980). The Fifth Circuit has permitted intervention even in the absence of a motion to intervene, citing Federal Rule of Civil Procedure 8(e)(1) ("[n]o technical forms of pleadings or motions are required") and Rule 8(f) ("[a]ll pleadings shall be so construed as to do substantial justice"). *Farina v. Mission Inv. Trust*, 615 F.2d 1068, 1074 (5th Cir. 1980).

The First, Second, and Seventh Circuits have taken a stricter approach to Rule 24(c). *See Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197, 205, n.6 (1st Cir. 1998) (failure to accompany motion to intervene with a pleading setting forth a claim or defense "ordinarily would warrant dismissal" of the motion); *Abramson v. Penwood Inv. Corp.*, 392 F.2d 759, 761 (2nd Cir. 1968) ("appellant's reference in his motion papers to the allegations of the original complaint was insufficient to comply with the requirements of Rule 24(c)"); *Shevlin v. Schewe*, 809 F.2d 447, 450

---

[1] The Sixth Circuit cases cited by Hillandale Committee for the proposition that this Court "has taken a liberal and non-technical approach to intervention under Civil Rule 24," Hillandale Committee Brief at 9, are inapposite, as they all deal specifically with how broadly to construe Rule 24's "substantial interest" requirement, which will be discussed below, and not with the consequence of a procedural failure.

(7th Cir. 1987) ("Federal Rule of Civil Procedure 24(c) is unambiguous in defining the procedure for an intervenor," and requires a pleading to accompany the motion to intervene). However, the Seventh Circuit in *Shevlin* emphasized that a court *may* excuse a non-prejudicial failure to comply with the requirements of Rule 24(c), but saw no reason to do so in that case, where the attempted intervenor not only did not timely file a pleading, but in fact did not at any time offer the requisite pleading. *Id.*

We conclude that the district court abused its discretion in rejecting Hillandale Committee's motion to intervene on the basis that it failed to attach a pleading. Hillandale Committee's motion to intervene alleged a claim or defense with a common question of law and fact as in the main action (the constitutionality of the rezoning). After the district court denied Hillandale Committee's motion to intervene, but still before the entry of the consent judgment, Hillandale Committee filed a motion for relief from judgment to which an Answer was attached. Furthermore, neither party has ever claimed that any prejudice would result from granting the motion to intervene despite the failure to attach a pleading; the parties are clearly on notice as to Hillandale Committee's position and arguments. The district court's exacting application of Rule 24(c) is not in accord with the jurisprudence of a majority of the Circuits, which favor a permissive approach, or with the rationale applied by other circuits to approve strict enforcement of Rule 24(c) in some circumstances (e.g., where the parties are not on notice as to the grounds asserted for intervention, or there is some other prejudice to the parties).

## II.     Hillandale Committee Did Not Have a Substantial Legal Interest in the Subject Matter of Providence's Lawsuit against Euclid

### A.     Standard of Review

Except as to issues of timeliness, which are not presented here, this Court's review of a district court's denial of a motion to intervene under Rule 24(a)[2] of the Federal Rules of Civil Procedure is *de novo. Stupak-Thrall v. Glickman*, 226 F.3d 467, 471 (6th Cir. 2000) (citations omitted).

### B.     Federal Rule of Civil Procedure 24

Under the Federal Rules of Procedure, a non-party may intervene in an action as of right "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." FED. R. CIV. P. 24(a)(2).

We have interpreted Rule 24(a) to require an entity seeking to intervene to establish four elements: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997) (citing *Cuyahoga Valley Ry. Co. v. Tracy,* 6 F.3d 389, 395 (6th Cir.1993)).

The focus of this case is on whether Hillandale Committee has a substantial legal interest in Providence's suit against Euclid. We have adopted "a rather expansive notion of the interest sufficient to invoke intervention of right." *Id.* (citations omitted). For example, "an intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district

---

[2]Rule 24(a) governs intervention as of right. Hillandale Committee also moved for permissive intervention under Rule 24(b), but has not appealed the denial of that motion.

court suit where the plaintiff has standing." *Associated Builders & Contractors v. Perry,* 16 F.3d 688, 690 (6th Cir. 1994).

## C.        The Accuracy of Hillandale Committee's Self-Description

We have serious concerns about whether Hillandale Committee is, in fact, what it claims to be. Hillandale Committee argues that as the "duly authorized committee for a referendum opposing the rezoning of certain properties," it has an interest in protecting "the vote of the people and the results of the election against its destruction and nullification through a Settlement Agreement or Consent Judgment destroying the vote of the people and the results of the election." (Hillandale Committee Br. at 15.) Hillandale Committee similarly described itself in its motion to intervene as "the duly authorized committee which circulated the referendum petitions." (J.A. at 119.)

However, Hillandale Committee has presented very little evidence establishing that it is, in fact, the "the duly authorized committee which circulated the referendum petitions." The referendum petitions requiring Euclid to place the zoning code ordinances on the ballot were submitted on March 1, 2004. Hillandale Committee was not incorporated until October 20, 2004. All of the campaign literature opposing the re-zoning which Hillandale Committee attached to submissions before the district court bears not the name of "Hillandale Committee, Ltd.," but instead, that of the "Euclid Awareness Committee." The website of the Euclid Awareness Committee claims the credit for gathering and submitting the signatures on the referendum petition.

Hillandale Committee's only attempt to explain what appears to be a major obstacle to its intervention attempts in this case is the submission of an affidavit from one Rebecca Conway, who avers that she has been actively involved in the campaign for a referendum on the rezoning ordinances, and that "there was and is a referendum committee composed of six (6) members for the Rezoning Ordinances who represents the Hillandale Committee which initially was an unincorporated association of individuals, but who later formed the Hillandale Committee Ltd." (J.A. at 327.) Conway does not identify any of the six members by name, nor does she explain what part they played in the campaign for a referendum on the rezoning.

In its reply brief, Hillandale Committee asserts that there was an unincorporated Hillandale Committee that "the law recognizes . . . as the legal entity responsible for the filing of the referendum petition." Reply Br. at 13. Hillandale Committee does not offer any documentation to support this claim, however. Hillandale Committee asserts that it is the successor to this unincorporated group, and has the same legal interests in this action.

In short, there is a serious question as to whether Hillandale Committee is, in fact, the "duly authorized committee which circulated the referendum petitions." If it is not, it has no basis from which to claim a substantial legal interest in protecting the results of the referendum. Therefore, if we were inclined to reverse the district court's denial of Hillandale Committee's motion to intervene and the entry of the consent judgment, the case would first have to be remanded for further factual findings related to Hillandale Committee's identity. However, because, for the reasons that follow, we would not conclude that Hillandale Committee had a substantial legal interest in the litigation between Providence and Euclid even if it were perfectly clear that Hillandale Committee is what it claims to be, no such remand is necessary.

## D.        Hillandale Does Not Have a Substantial Legal Interest in "Protecting" the Results of the November 2, 2004 Referendum

The district court determined that Hillandale Committee's motion to intervene was "mooted by the November 2, 2004 general election because the zoning ordinances at issue here were included on the ballot in that election . . . . Because the zoning ordinances appeared on the general election's ballot, the voters clearly exercised their referendum rights." (J.A. at 208.) The district court

concluded that Hillandale Committee had no cognizable legal interest in the subject matter of the litigation between Providence and Euclid.

We agree. Hillandale Committee argues that the district court erred in failing to recognize its interest in "protecting the vote of the people and the results of the election." However, it is Hillandale Committee which errs in failing to recognize that any interest it had in this case sufficient to permit intervention ended when the election took place on November 2, 2004.

We will assume for purposes of this issue that Hillandale Committee is what it claims to be: "the duly authorized committee which circulated the referendum petitions." The referendum petition took no position on the merits of the referendum; rather, it simply asked that the ordinance rezoning Providence's land be submitted to the electors for their approval or rejection. As such, Hillandale Committee had no interest in the outcome of the election or in any negotiations between Euclid and Providence after the election was held. In contrast to the cases cited by Hillandale Committee in its brief, this case raises no issue as to the validity of the election. *Cf. State ex rel. Comm. for the Referendum of Ordinance no. 77-01 v. Lorain Cty. Bd. of Elections*, 774 N.E. 2d 239 (Ohio 2002) (referendum petition committee permitted to intervene as a respondent in case challenging validity of signatures on referendum petition); *State ex rel. Ryant Commt v. Lorain City Bd. of Elections*, 712 N.E. 2d 696 (Ohio 1999) (intervention permitted in case challenging validity of petition signatures).

The referendum at issue in this case took place and was certified without incident. Any substantial legal interest held by "the duly authorized committee for a referendum which circulated the referendum petitions" was terminated when the referendum was held and the results certified. Hillandale Committee's alleged advocacy in getting the zoning ordinance on the November 2004 ballot does not suffice to make it a "real party in interest in the transaction which is the subject of the proceeding" – the negotiated settlement between Providence and Euclid. *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1246 (6th Cir. 1997). Rather, its interest in the negotiated settlement is "so generalized it will not support a claim for intervention of right." *Athens Lumber Co., Inc. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982).

In any event, even if Hillandale Committee was a "real party in interest," it could not intervene to challenge the negotiated settlement because "concerns for state autonomy . . . deny private individuals the right to compel a state to enforce its laws." *Diamond v. Charles*, 476 U.S. 54, 65 (1986) (rejecting an individual's attempt to intervene in a lawsuit challenging the constitutionality of an Illinois abortion regulation, where the state acquiesced in the court's ruling of unconstitutionality). We therefore affirm the district court's denial of Hillandale's motion to intervene.

### III.        Hillandale's Lack of Standing to Appeal the Entry of the Consent Judgment

We decide this issue because our March 15, 2005 order clearly stated that this panel would "decide whether the appellant's interest in the litigation equates to Article III standing for the purposes of pursuing an appeal of the consent judgment or whether the appeal is moot because no effective relief can be granted." However, we note our dissatisfaction with Hillandale Committee's failure to address this issue except for a passing reference in its reply brief.

The Supreme Court has held that for an intervenor to continue litigation by pursuing an appeal when the party on whose side it has intervened has not appealed, the intervenor must have standing in its own right. *Diamond*, 476 U.S. 68 (1986). *See also Perry*, 16 F.3d at 690. If Hillandale Committee does not have standing to appeal the consent judgment, then this appeal would be moot even if we had determined that Hillandale should have been permitted to intervene, because without standing to appeal the final judgment there is no effective relief available to Hillandale. *See Nat'l Post Office Mailhandlers v. U.S. Postal Serv.*, 751 F.2d 834, 843 (6th Cir. 1985).

As we noted in our order of March 15, 2005, the issue of whether Hillandale Committee has standing to appeal from the entry of the consent judgment is closely related to the question of whether it should have been permitted to intervene. However, there is not perfect overlap between the requirements for intervention under Rule 24(a) and the requirements for Article III standing; indeed, the requisite showing for Article III standing is more rigid in certain of its requirements. At a minimum, a party seeking to establish Article III standing must show: 1) "'an injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical,'" 2) a causal connection between the injury and the conduct complained of, and 3) a likelihood of redressability by a favorable judgment. *Zurich Ins. Co. v. Logitrans, Inc*., 297 F.3d 528, 531 (6th Cir. 2002) (citing *Kardules v. City of Columbus,* 95 F.3d 1335, 1346 (6th Cir. 1996)).

It is possible to have standing to intervene in a lawsuit, but not have Article III standing to bring an independent appeal. *Perry*, 16 F.3d at 690. This is so because the "injury in fact" requirement is stricter than the "substantial interest" inquiry. The "'injury in fact' requirement mandates that the party allege 'such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction." *Id.* (citations omitted) (emphasis in original).

As Hillandale Committee's interest in protecting the results of the referendum is not sufficiently particularized to satisfy the requirement of a substantial interest for intervention purposes, then it is clear that the alleged "injury in fact" is not of "such a personal stake" as to permit a finding that Hillandale Committee has standing to challenge the entry of the consent judgment *See id*. We therefore hold that Hillandale Committee does not have standing to challenge the consent judgment. This holding also provides an additional ground for affirming the district court's denial of the motion to intervene, because it leaves Hillandale Committee with no effective relief as an intervenor.

For the foregoing reasons, we **AFFIRM** the district court's denial of the motion to intervene and **DISMISS** Hillandale Committee's appeal from the entry of the consent judgment for lack of standing.